(1)     any taxes, rates, levies, assessments and other impositions applicable to the Project or the Property;

(2)     any indebtedness and other obligations with respect to the Property or the Project, including:

(i)     any fee or other cost in connection with the Development Approvals;

(ii)     any amount payable to the General Contractor, or any Services Contractor or Consultant and any other cost of labor or services in connection with the Project;

(iii)     the cost (including rental charges) of materials, supplies, plants and other landscaping materials, machinery, equipment, fixtures, furnishings, goods and other fixed property or tangible personal property acquired or used in connection with the Project; and

(iv)     sales taxes and other taxes (and, in conjunction with any such payment, applying for any available credit or rebate);

(3)     any fee, expense or other amount to which Palumbo is entitled pursuant to this Agreement; and

(4)     any other amount expressly contemplated in this Agreement;

3.2.     Information.

Palumbo shall provide the Owner, at reasonable times and subject to reasonable prior notice, complete and unfettered access to all information and records in the possession or control of Palumbo with respect to the Project and, by providing the Bi-Monthly Progress Reports and upon consultation upon request from time to time, shall keep the Owner fully informed on a regular basis of the progress of the planning, programming, permitting, design, construction and development of any work to be accomplished in connection with this Agreement.

3.3.     Employees.

Palumbo shall ensure that there are a  sufficient number of capable consultants and independent contractors to enable Palumbo to perform properly its duties and obligations under this Agreement in accordance with the Performance Standard. All such persons employed in the performance of its responsibilities hereunder shall be exclusively controlled by, and shall be the employees of, either the General Contractor or other consultant(s) and not by the Owner, and the Owner shall not have any liability, responsibility or authority with respect to such employment or control of such persons.

### 3.4.   No Requirement to Expend Money.

Palumbo shall not be required (and, without the consent of the Owner, shall have no authority) to expend or advance any of its own money on behalf of the Owner. Palumbo shall have no authority to incur on behalf of the Owner any liability, obligation, debt, cost, expense, claim or judgment in performing its services under this Agreement. In the event that, with the consent of the Owner, Palumbo does expend or advance any of its own money on behalf of the Owner, such expenses or advances shall be deposited by the Owner into the Disbursement Account for payment to Palumbo no later than 30 days after receipt by Owner of reasonable written supporting documentation.

### 3.5.   Accounts.

After approving disbursements of any sums payable in connection with the Project Services, the Owner shall disburse such sums directly to the Disbursement Account for further disbursement to the General Contractor, the Architect, Services Contractors or Consultants or for other Project Costs, or to the Owner at the Owner's request. Palumbo shall make withdrawals and disbursements from any Disbursement Account only upon the signature or signatures of individuals designated by Palumbo and approved by the Owner; provided, however, that the Owner shall have the right, at any time, to terminate Palumbo's signature authority over the Disbursement Accounts. The Owner shall select the financial institutions with which the Disbursement Accounts shall be maintained. All sums in Disbursement Accounts shall be and shall remain the property of the Owner. In the absence of a Default by Palumbo or an event that with notice and/or the lapse of time would constitute a Default by Palumbo, and if the Owner has not terminated Palumbo's signature authority over the Disbursement Accounts, Palumbo shall make disbursements from the Disbursement Account to pay the obligations of the Owner incurred in connection with the Project Services. Palumbo shall not commingle the Owner's funds with the funds of any other Person.

### 3.6.   Insurance.

During the term of this Agreement, unless otherwise agreed by Owner and Palumbo, Palumbo shall maintain, during the term of this Agreement and at least two (2) years beyond completion or termination of the work under this Agreement or completion of the Project, whichever is later, the following insurance:

(a)     Should Palumbo ever hire an employee, to the extent applicable to an employee of Palumbo, workers compensation insurance (statutory limits complying with law in the state of California) and employer's liability insurance with limits not less than $1,000,000 bodily injury by accident (each accident), $1,000,000 bodily injury by disease (policy limit), and $1,000,000 bodily injury by disease (each employee). Such policies shall cover both on-site and off-site activities and contain a waiver of subrogation in favor of Owner, and its partners, any subsidiaries or affiliates and any lenders.

(b)     Commercial general liability insurance for Palumbo's off-site activities, written on an occurrence policy form, with limits of not less than $5,000,000 for bodily injury and property damage per occurrence, and with deductibles or self-insured retentions acceptable

to Owner. All liability policies shall provide, without limitation, severability of interests (separation of insureds), contractual liability coverage (including coverage to the maximum extent possible for the indemnification obligations contained in the Agreement), broad form property damage coverage, elevator coverage, fire legal liability coverage, independent contractor coverage, cross- liability coverage and a duty to defend in addition to (without reducing) the limits of the policy(ies).

(c)     Commercial automobile liability insurance covering owned, non-owned and hired automobiles, trucks and trailers, or semi-trailers, including any machinery or apparatus attached thereto, with limits not less than $1,000,000 combined single limit for bodily injury and property damage (each accident), and with deductibles or self-insured retentions acceptable to Owner.

Owner, any subsidiaries or affiliates designated by written notice from Owner to Palumbo and any lenders shall be named as additional insureds under the commercial general liability insurance policies. The coverage provided to the additional insureds shall be at least as broad as that provided to Palumbo and may not contain any additional exclusionary language or limitations applicable to the additional insureds.

All policies of insurance maintained by Palumbo shall be endorsed to be primary coverage, and any coverage carried by Owner shall be excess and non-contributory.

Upon request of the Owner, Palumbo shall deliver certificates of insurance evidencing the coverages required under this Agreement. All certificates of insurance must provide Owner with 30 days advance written notice of cancellation, intent to non-renew, or adverse material change in reduction of coverage.

All insurance maintained by Palumbo shall be obtained from insurance carriers qualified to do business in the state where the Project is located and having a rating of not less than A:X from A.M. Best & Co., unless Owner, in its sole discretion, gives written notice of its acceptance of a lower Best's rating.

None of the requirements contained in this Section 3.6 as to types, limits and approval of insurance coverage to be maintained by Palumbo are intended to, and shall not in any manner, limit or qualify the liabilities and obligations assumed by Palumbo under this Agreement or at law, including without limitation indemnification obligations and liability in excess of the limits of the coverages required under this Agreement. Neither receipt of certificates showing less or different coverage than so required, nor any other forbearance or omission by Owner shall be deemed a waiver of, or estoppel to assert, any right or obligation regarding the insurance requirements herein.

4.     GENERAL

4.1.     Budget.

(a)     Palumbo shall use commercially reasonable efforts to perform its duties, responsibilities and obligations under this Agreement in accordance with the Approved Budget. No deviation from any Budget is permitted without the prior written approval of the Owner.

(b)     Palumbo may incur expenditures of no more than $15,000.00 in the aggregate without obtaining the approval of the Owner in the event of an emergency where (i) the failure to immediately take appropriate steps to remedy the emergency would directly result in increased damage to the Project or endangerment of the Project, and (ii) it would be impossible or impractical to obtain the approval of the Owner for the expenditure prior to taking such appropriate steps to remedy the emergency. Palumbo shall notify the Owner as soon as practicable of any emergency and provide reasonable written supporting documentation of the expenditures incurred to remedy it.

(c)     In connection with the Bi-Monthly Progress Reports, or at any time upon request by either Palumbo or the Owner, acting reasonably, but with the intention of meeting no less frequently than once per month, Palumbo and the Owner shall meet to review the Budget in relation to the status of the Project and the Project Costs incurred to date. If Palumbo at any time determines that the Budget is not compatible with the then-prevailing status of the Project and does not adequately provide for the completion of the Project, Palumbo shall promptly prepare and submit to the Owner an appropriate revision of the Budget.  Any such revision shall require the prior written approval of the Owner.

4.2.    Contract Documents.

Palumbo shall prepare and negotiate on behalf of the Owner, for execution by the Owner, any contracts with Consultants, Services Contractors and other third parties on reasonably competitive terms and conditions consistent with the Development Approvals, the Plan and the Budget then in effect with respect to the Project.  All Approved Plans and contract documents shall remain the property of the Owner, to the extent not owned by the Architect.

4.3.    Transactions with Affiliated Entities.

Except where approved in advance by the Owner, Palumbo shall not propose to the Owner any contract, undertaking or transaction with any Affiliate of Palumbo relating to the Project (including contracts for the provision of supplies or services to that Project or the purchase, lease, license or other acquisition of property or assets to be utilized in connection with the Project). Palumbo shall disclose to the Owner its affiliation with any Services Contractor, Consultant or any other Person engaged in any manner in connection with the Project before proposing that the Owner engage such Services Contractor, Consultant or Person (either contractually, for bidding purposes or otherwise).

4.4.    Limitation of Liability of Palumbo.

Palumbo shall not be liable to the Owner for any act or omission made in good faith and in accordance with its obligations and within the scope of its authority under this Agreement, except to the extent that such act or omission constitutes a Default by Palumbo, negligence or willful misconduct of Palumbo or an unlawful act of Palumbo or any Person for whom, by law, Palumbo is responsible. Without limiting the generality of the foregoing provision, Palumbo shall not be liable to the Owner for any cost overruns, delays, design defects, construction defects or other damage or expense arising out of acts, errors or omissions of the Services Contractors or Consultants, except to the extent arising out of a Default by Palumbo, negligence

or willful misconduct of Palumbo, or an unlawful act of Palumbo or any Person for whom, by law, Palumbo is responsible.

5.   DEVELOPMENT SERVICES FEE

    5.1.   Fee.

The Owner shall pay to Palumbo a fee, not to exceed the amounts provided in Schedule 5.1

6.   REPORTING AND ACCOUNTING

    6.1.   Reporting Requirements.

By the tenth (10th) day and the twenty-fifth (25th) day of each calendar month during the occurrence of the Project Services, Palumbo shall prepare and deliver to the Owner (and to such other parties identified by the Owner) the Bi-Monthly Progress Reports. Concurrently with delivery of any Bi-Monthly Progress Report, costs actually expended as of the date of the Bi-Monthly Progress Report shall be certified by Palumbo as being true, complete and correct. Notwithstanding the foregoing, all financial information (such as financial statements) delivered in connection herewith shall be prepared by Palumbo in accordance with generally accepted accounting principles and shall be delivered each month no later than the earlier of (a) ten (10) days following a Construction Loan draw request submitted with respect to that phase of the Project, and (b) the tenth (10th) day and the twenty-fifth (25th) day of such month, as applicable.

    6.2.   Palumbo's Books and Records.

Palumbo shall provide the Owner with any accounting and financial information and supporting documents relating to Project Costs in the possession or control of or available to Palumbo that such Person reasonably requests, but the such Persons shall be entitled only to such information in a form readily available to Palumbo, and Palumbo shall not be required to organize or present such information in any other form or to analyze, summarize or otherwise report on such information.

    6.3.   Owner's Books and Records.

The Owner shall provide Palumbo with any accounting and financial information and supporting documents relating to the Project Services in the possession or control of the Owner that Palumbo reasonably requests, but Palumbo shall be entitled only to such information in a form readily available to the Owner, and the Owner shall not be required to organize or present such information in any other form or to analyze, summarize or otherwise report on such information.

    6.4.   Access to Books and Records.

The Owner shall permit Palumbo, and Palumbo shall permit the Owner to have reasonable access to examine and copy during reasonable business hours their books and records

pertaining to the Project Services or any other matter relating to this Agreement, at the expense of the party so examining and copying.

7.   COVENANTS OF THE OWNER

    7.1.   Covenants of the Owner.

Provided Palumbo shall not be in Default hereunder, the Owner shall:

    (a)   pay on or before the due date all amounts payable by the Owner to Palumbo pursuant to, or as contemplated by, this Agreement;

    (b)   give prompt consideration to all things relating to the Project Services reasonably presented by Palumbo to the Owner for consideration, approval or other action, and inform Palumbo of any comments, approvals or decisions of the Owner within a reasonable time, but in the event that any such approval is not granted by Owner within seven (7) days of the request, such request shall be deemed disapproved;

    (c)   arrange for reasonable access to the Property and the Project by Palumbo at all times to enable Palumbo to perform its services hereunder; and

    (d)   give prompt written notice to Palumbo whenever the Owner identifies any matter relating to the Project or the Property that the Owner reasonably determines would be material to Palumbo in the performance of its services hereunder.

    7.2.   Indemnities.

    (a)   Palumbo shall indemnify, defend and hold harmless the Owner and its shareholders, directors, partners, members, managers, officers and employees from and against any claim, demand, action, lawsuit, proceeding, damages, loss, liability, judgment or award, and any cost or expense (including court costs, reasonable fees and expenses of attorneys, consultants and expert witnesses, and other reasonable costs and expenses incurred in investigating, preparing for, or defending against any such claim, demand, action, lawsuit or proceeding), related to this Agreement or the performance by Palumbo of its services under this Agreement, but only to the extent arising out of the negligence or willful misconduct of Palumbo, or a Default by Palumbo, or an unlawful act of Palumbo or any other Person for whom, by law, Palumbo is legally responsible.

    (b)   The Owner shall indemnify, defend and hold harmless Palumbo and its shareholders, directors, partners, members, managers, officers and employees from and against any claim, demand, action, lawsuit, proceeding, damages, loss, liability, judgment or award, and any cost or expense (including court costs, reasonable fees and expenses of attorneys, consultants and expert witnesses, and other reasonable costs and expenses incurred in investigating, preparing for, or defending against any such claim, demand, action, lawsuit or proceeding), related to this Agreement, the appointment of Palumbo under this Agreement or the performance by Palumbo of its services under this Agreement, but only to the extent arising out of the negligence or willful misconduct of the Owner, or a Default by the Owner, or an unlawful act of the Owner or any other Person for whom, by law, the Owner is legally responsible.

7.3.   Survival

The provisions of this Section 7 shall survive the completion of Palumbo's services hereunder or any termination of this Agreement.

8.   TERMINATION

8.1.   Termination.

Palumbo's appointment hereunder may be terminated at any time by written agreement between the Owner and Palumbo or upon the occurrence of any of the following events (each, a "Termination Event"):

(a)   by Palumbo giving the Owner written notice of such termination, in the event of a Default by the Owner or a Bankruptcy Event with respect to the Owner; or

(b)   by the Owner giving Palumbo written notice of such termination, in the event (1) of a Default by Palumbo, (2) of a Change of Control of Palumbo, (3) of a Bankruptcy Event with respect to Palumbo, (4) that Palumbo misappropriates any funds of the Owner in the possession or control of Palumbo, (5) that Palumbo commits criminal conduct, willful misconduct, gross negligence or an act of fraud against the Owner or (6) the Project and/or the Property is sold by the Owner.  In the event of the termination of this Agreement under this Section 8.1(b), with respect to any part of the Project as to which construction has commenced as of the date of such termination, upon request of the Company, Palumbo shall continue the development services and other duties hereunder with regard to such part of the Project pursuant to this Agreement (and payment for such services shall continue as set forth in this Agreement) and such termination shall be effective upon the date as may be designated by the Owner).

8.2.   Duties Upon Termination.

(a)   Upon termination of Palumbo's appointment under this Agreement in accordance with Section 8.1, Palumbo shall promptly deliver the following to the Owner or in accordance with the directions of the Owner:

(1)   any funds of the Owner held by Palumbo, whether received by Palumbo before or after such termination (and Palumbo shall take all steps necessary to transfer any accounts); and

(2)   all material documents pertaining to the Project and in existence at the date of termination, including all books of account, bank books, correspondence, plans, permits, market studies, surveys, tests and contracts, but Palumbo shall be entitled, for a period of three (3) years thereafter, to inspect, examine and copy any such documents at any reasonable time upon ten days of advance notice to the Owner.

(b)   Palumbo shall cooperate with the Owner as the Owner shall reasonably require in order to effectuate an orderly and systematic termination of Palumbo's duties and responsibilities under this Agreement and orderly and systematic transfer of duties to Palumbo's successor. This Section 8.2 shall survive any termination of this Agreement.

8.3.   Compensation of Palumbo on Termination.

If Palumbo's appointment under this Agreement is terminated under Section 8.1, within 60 days after such termination, the Owner shall pay to Palumbo all amounts earned by (in accordance with Section 5.1) and owing to Palumbo under this Agreement (including any amount owing under Section 5.1), calculated as of the date of termination, including the Aggregate Development Fee less the aggregate of all Monthly Draws in the event this Agreement is terminated due to a sale of the Project and/or the Property. The right of Palumbo to receive the payments required to be paid under this Section 8.3 shall constitute the sole and exclusive remedy of Palumbo in the event that Palumbo's appointment is terminated under this Agreement. Palumbo hereby waives all other remedies available at law or in equity.

8.4.   Determination of Termination Event.

If either party to this Agreement shall make a claim that a Termination Event has occurred, such party shall provide written notice of such claim to the other party, and, if applicable, the Lender. Such notice shall identify the Termination Event and shall include the following statement set forth in capital letters: "THIS NOTICE SHALL CONSTITUTE WRITTEN NOTICE OF OUR DETERMINATION THAT A "TERMINATION EVENT" HAS OCCURRED UNDER THE DEVELOPMENT SERVICES AGREEMENT DATED AS OF MARCH __, 2014 AMONG THE OWNER AND PALUMBO. IF YOU DISPUTE WHETHER A TERMINATION EVENT HAS OCCURRED, YOU MUST SUBMIT SUCH DISPUTE TO "ARBITRATION" IN ACCORDANCE WITH THE TERMS OF SAID DEVELOPMENT SERVICES AGREEMENT WITHIN SEVEN DAYS OF RECEIPT OF THIS WRITTEN NOTICE. YOUR FAILURE TO SUBMIT SUCH DISPUTE TO ARBITRATION WITHIN SUCH SEVEN-DAY PERIOD SHALL CONSTITUTE AN IRREVOCABLE, BINDING ADMISSION BY YOU THAT A TERMINATION EVENT HAS OCCURRED." Any party to this Agreement receiving a notice of the occurrence of a Termination Event in accordance with the terms of this Section 8.4 shall have the right to dispute whether a Termination Event has occurred only by submitting such dispute to arbitration within seven days of receipt of such notice. Failure to submit such dispute to arbitration within such seven-day period shall be deemed to constitute an irrevocable, binding admission that a Termination Event has occurred. Any contrary provision of this Agreement notwithstanding, if a dispute as to whether a Termination Event has occurred is properly submitted to arbitration within such seven-day period, no party to this Agreement shall have the right to take any actions or exercise any rights or remedies on account of such alleged Termination Event, and Palumbo's appointment under this Agreement shall not be terminated, unless and until there has been a determination pursuant to arbitration that a Termination Event has occurred.

9.   ARBITRATION

9.1.   Arbitration.

The determination of whether or not a Termination Event has occurred shall be referred to and shall be settled by arbitration in accordance with the provisions of Section 9.2.

9.2.    Arbitration Procedure.

Notwithstanding anything to the contrary contained in this Agreement or in the Expedited Procedures provisions (Rules E-1 through E-10 in the current edition) of the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), the parties hereto acknowledge and agree that all disputes (regardless of any dollar amount in dispute) with respect to whether a Termination Event has occurred under this Agreement shall be submitted to binding arbitration ("Expedited Arbitration") under the AAA Expedited Procedures. In cases where Expedited Arbitration shall be utilized: (i) the party submitting the dispute to the AAA for Expedited Arbitration must file a demand for Expedited Arbitration with the AAA within the seven (7) day period required by Section 8.4, and the party making such demand shall deliver a copy of such demand to the other parties hereto pursuant to Section 10.7, (ii) the parties shall have no right to object if the arbitrator so appointed was on the list submitted by the AAA and was not objected to in accordance with Rule E-5, (iii) as a condition to accepting appointment, the arbitrator must agree to render a determination within twenty (20) days of the date of the first hearing is deemed closed by the arbitrator, (iv) the first hearing shall be held within seven (7) days after confirmation of the appointment of the arbitrator, (v) the arbitrator's determination shall be binding upon the parties, (vi) the losing party in such arbitration shall pay the arbitration costs charged by AAA and the arbitrator's fees, and (vii) the sole issue to be decided shall be whether a Termination Event has occurred, and, if there is a determination that a Termination Event has occurred, there shall be no determination as to the amount of damages incurred as a result of such Termination Event (any determination of damages shall be made by a court of competent jurisdiction).

10.    MISCELLANEOUS

10.1.    Assignment/Delegation by Palumbo.

(a)    Palumbo shall not assign any of its rights or obligations under this Agreement to any Person without the prior written consent of the Owner, which consent may be granted or withheld by the Owner in its sole and absolute discretion, Any such assignment by Palumbo shall not release or discharge Palumbo from the performance of its covenants in, or obligations under, this Agreement unless, and only to the extent that, the Owner delivers to Palumbo a written instrument confirming such release or discharge.

(b)    Palumbo may delegate any duties arising under this Agreement, or subcontract for the performance of any of its services under this Agreement, to any Affiliate, without the consent of the Owner, but no such delegation or subcontracting shall relieve Palumbo from any of its obligations under the Agreement, and Palumbo shall be responsible to compensate such Affiliate from the fee payable to Palumbo pursuant to Section 5.1.

10.2.    Assignment of Property Documents.

Concurrently with the execution of this Agreement by each party hereto, Palumbo shall cause Michael Palumbo to assign all right, title and interest, free and clear of any encumbrance, claim, lien or charge of any kind, to the Owner to the following agreements and documents in the form set forth in Schedule 10.2:

(a)    the Purchase Agreement;

(b)    Statewide Buyer and Seller Advisory dated February 17, 2014;

(c)    Disclosure Regarding Real Estate Agency Relationship dated February 4, 2014;

(d)    Seller Vacant Land Questionnaire dated February 17, 2014;

(e)    Residential Earthquake Hazards Report dated February 18, 2014;

(f)    Lead-based Paint and Lead-based Paint Hazards Disclosure, Acknowledgment and Addendum dated February 4, 2014;

(g)    Carbon Monoxide Detection Notice dated February 18, 2014;

(h)    Market Conditions Advisory dated February 17, 2014;

(i)    Disclosure Addendum dated February 22, 2014;

(j)    Disclosure and Consent for Representation of More than One Buyer or Seller dated February 4, 2014;

(k)    Buyer Inspection Waiver dated February 22, 2014;

(l)    Agent Visual Inspection Disclosure dated February 20, 2014;

(m)    Preliminary Title Report prepared by American Title;

(n)    Escrow Instructions dated February 19, 2014 as amended February 20, 2014;

(o)    Survey prepared by Peak Surveyors dated May 31, 2013;

(p)    Geology report prepared by Grover Hollingsworth & Associated dated August 1, 2013; and

(q)    Architectural Plan Agreement dated February 17, 2014.

10.3.   Further Assurances.

The Owner and Palumbo shall each execute and deliver to the other such documents and instruments and take such further actions as may be reasonably necessary or required to give full force and effect to this Agreement.

10.4.   Consultants and other Representatives.

Palumbo shall cooperate with any consultants, architects, engineers and representatives appointed by a Lender or the Owner, from time to time to review and assess the progress of the construction of the Project (including, upon reasonable prior notice, providing unfettered access to the Project) and shall provide such consultants, architects, engineers and representatives with

any information relating to the Project Services reasonably requested by such consultants, architects, engineers or representatives.

    10.5.   Other Activities; Competition.

The Owner and Palumbo shall each have the right to engage in, or possess an interest in, any other business ventures, activities and investments, independently or with others, similar or dissimilar to the other's business, provided, however, that Palumbo shall not engage in any such business ventures, activities and/or investments that are in conflict or competition with the Project. Except as expressly provided above, neither the Owner nor Palumbo shall have any rights, by virtue of this Agreement or the relationship created by this Agreement, in or to any such business ventures, activities or investments of the other party, or to income or proceeds derived from such ventures, activities or investments and the pursuit of such ventures, activities or investments by the Owner, its partners, Palumbo or their respective Affiliates shall not be deemed wrongful or improper.

    10.6.   Modifications, Approvals and Consents.

No amendment, modification or waiver of, and no consent or approval with respect to, any provision of this Agreement shall be effective unless in writing executed by the party against whom such amendment, modification, waiver, consent or approval is sought to be enforced, and any such waiver or consent or approval shall be effective only in the specific instance and for the specific purpose given.

    10.7.   Notices.

All notices, requests or other communications which may be or are required to be given, served or sent by either Palumbo or the Owner to the other shall be in writing and shall be deemed received (a) upon delivery in person, (b) if transmitted by facsimile (with a copy delivered in person or by overnight delivery the next Business Day), upon confirmation of receipt by printed facsimile acknowledgment, (c) by email (with a copy delivered in person or by overnight delivery the next Business Day) after being deposited for overnight delivery with any reputable overnight courier service, or (d) three Business Days after being deposited in any post office or mail depository regularly maintained by the United States Postal Office and sent by registered or certified mail, postage paid, return receipt requested, and in each case addressed as follows (or to such other address as either party may specify by notice to the other):

       *To Palumbo:*       Palumbo Design

                          4405 Estrondo Drive
                          Encino, CA  91436
                          Telephone:  (310) 963-0915
                          Email:  racingmp@aol.com

*and*            CA Land Use Professionals, LLP
                 4221 Wilshire Blvd., Suite 170-I
                 Los Angeles, CA 90010
                 Attention: Ellia Thompson
                 Telephone: (323) 931-9686
                 Fax Number: (310) 742-0255
                 Email: Ellia@calandusepros.com

*To the Owner:*  1169 Hillcrest LLC
                 5555 Badura Avenue, Suite 120
                 Las Vegas, NV 89118
                 Attn: Neil Moffitt
                 Telephone: (702) 212-8804
                 Fax Number: (702) 853-4385
                 Email: neil@hkkhospitality.com

*and*            Greenberg Traurig LLP
                 3773 Howard Hughes Parkway, Suite 400N
                 Las Vegas, NV 89169
                 Attention: Michael J. Bonner
                 Telephone: (702) 792-3773
                 Fax Number: (702) 792-9002
                 Email: bonnerm@gtlaw.com

10.8.   Estoppel Certificate.

Palumbo and the Owner shall each, within ten Business Days following a written request of the other from time to time, furnish to the other a written certificate stating (i) that this Agreement is unmodified and in full force and effect (or if there have been modifications, that the Agreement is in full force and effect as modified and stating the modifications), (ii) whether, to the best knowledge of such certifying party, the requesting party is in material default in the observance or performance of its agreements or obligations under this Agreement and, in the event of any such default, specifying the nature of each such default, and (iii) to the best of the knowledge and belief of the certifying party, any other matters reasonably requested by the requesting party. The requesting party and any other Person for which such certificate is requested may rely on such certificate, but no such certificate shall operate as a waiver of any default or other matter as to which the party executing it did not have actual knowledge.

10.9.   Consent to Jurisdiction.

Any dispute related hereto shall be filed in state or federal court located in Los Angeles County, California, and said courts shall be the exclusive jurisdiction for any such dispute. All parties consent to the jurisdiction of the state and federal court of California.

[Remainder of Page Intentionally Left Blank]

Palumbo and the Owner execute this Agreement as of the date first set forth above.

**OWNER:**

**1169 HILLCREST LLC,** a Nevada limited liability company

Date: _____

By: _____
Name:
Title

**PALUMBO:**

**PALUMBO DESIGN,** LLC, a California limited liability company

Date: _____

By: _____
    Michael Palumbo, Manager

**SCHEDULE 1.1(i)**

**Form of Budget**

**SCHEDULE 1.1(l)**

**Conceptual Budget and Schedule**

## SCHEDULE 5.1

### Development Services Fee

1.    Commencing 30 days after Owner's purchase of the Property, the Owner shall pay a monthly draw in the amount of $15,000.00 per month to Palumbo (the "**Monthly Draw**"). The Monthly Draw shall continue until the cumulative Monthly Draws equal seven percent (7%) of the construction cost of the Project or until the sale of the Project and/or Property, whichever shall first occur. All Monthly Draws will be an advance of the aggregate development fee (the "**Aggregate Development Fee**").

2.    The Aggregate Development Fee shall be calculated as follows:

The Sales Price of the Project and/or Property

Less real estate broker Commission

Less out-of-pocket costs of sale of the Project and/or Property incurred by Owner

Less all cash payments made by the Owner to purchase, develop and construct the Project and/or Property (the "**Owner Payments**")

Less a preferential return of 10% on all Owner Payments

Less all payments of principal and interest in the event that Owner determines to obtain financing for the purchase, development and construction of the Project and/or Property, including all costs incurred by Owner in connection with obtaining such financing(s).

Equals Net Profits on Sale of the Project and/or Property.

The Aggregate Development Fee shall be 40% of the Net Profits on Sale of the Project and/or Property.

The amount to be paid to Palumbo upon the sale of the Project and/or Property shall be:

The Aggregate Development Fee less the aggregate of all Monthly Draws upon the sale of the Project and/or Property.

## SCHEDULE 10.2

## Assignment and Assumption Agreement

## ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT**(this "**Assignment**") is made as of this _____ day of March, 2014, by and between Mike Palumbo ("**Assignor**"), with a mailing address of 4405 Estondo Drive, Encino, CA 91436 and 1169 North Hillcrest, LLC, a Nevada limited liability company ("**Assignee**"), with a mailing address of 5555 Badura Avenue, Suite 120, Las Vegas, Nevada 89118.

### RECITALS

A.    Assignor, as buyer, entered into that certain Residential Purchase Agreement and Joint Escrow Instructions (the "**Agreement**"), dated February 4, 2014, for the purchase and sale of the real estate commonly known as 1169 Hillcrest Road, Beverly Hills, CA 90210 (the "**Property**").

B.    Palumbo Design, LLC, a California limited liability company and Assignee are parties to that certain Development Services Agreement with respect to the Property dated of even date herewith (the "**Development Services Agreement**").

C.    Pursuant to the Development Services Agreement, Assignor is required to assign to Assignee the Agreement and related documents as set forth in Schedule 1 attached hereto and made a part hereof (such documents together with the Agreement, the "**Property Documents**").

D.    All capitalized terms used in this Assignment without separate definition shall have the same meanings assigned to them in the Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the recitals set forth above, which are made a part of this Assignment, the mutual covenants hereinafter contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    Assignment.  Assignor hereby assigns, conveys, transfers, and sets over unto Assignee all of Assignor's right, title, and interest in the Property Documents, free and clear of any encumbrance, claim, lien, or charge of any kind, to have and to hold the same unto Assignee, its successors and assigns.

2.    Assumption.  From and after the date hereof, Assignee assumes all of Assignor's obligations under the Agreement first arising and relating to the period on or after the date hereof.

3.    Binding Effect.  This Assignment shall be binding upon and inure to the benefit of the Assignor and Assignee and each of their respective successors and assigns.

4.    Counterparts.  This Assignment may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument.

5.      Governing Law.  This Assignment shall be governed by, interpreted under and construed and enforceable in accordance with the laws of the State of California.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the day and year first above written.

**ASSIGNOR:**

_____

Michael Palumbo

**ASSIGNEE:**

1169 Hillcrest, LLC, a Nevada limited liability company

By: _____
Name: _____
Title: _____

**SCHEDULE 1**

(a)     Statewide Buyer and Seller Advisory dated February 17, 2014;

(b)     Disclosure Regarding Real Estate Agency Relationship dated February 4, 2014;

(c)     Seller Vacant Land Questionnaire dated February 17, 2014;

(d)     Residential Earthquake Hazards Report dated February 18, 2014;

(e)     Lead-based Paint and Lead-based Paint Hazards Disclosure, Acknowledgment and Addendum dated February 4, 2014;

(f)     Carbon Monoxide Detection Notice dated February 18, 2014;

(g)     Market Conditions Advisory dated February 17, 2014;

(h)     Disclosure Addendum dated February 22, 2014;

(i)     Disclosure and Consent for Representation of More than One Buyer or Seller dated February 4, 2014;

(j)     Buyer Inspection Waiver dated February 22, 2014;

(k)     Agent Visual Inspection Disclosure dated February 20, 2014;

(l)     Preliminary Title Report prepared by American Title;

(m)     Escrow Instructions dated February 19, 2014 as amended February 20, 2014;

(n)     Survey prepared by Peak Surveyors dated May 31, 2013;

(o)     Geology report prepared by Grover Hollingsworth & Associated dated August 1, 2013; and

(p)     Architectural Plan Agreement dated February 17, 2014.

EXHIBIT 2

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made as of December **8**, 2015 (the "Effective Date"), by and between Palumbo Design, LLC ("Palumbo"), on the one hand, and 1169 Hillcrest, LLC, NAM2 LLC, and Neil Moffitt (together, "Moffitt") on the other hand. Palumbo and Moffitt are hereafter referred to individually as a "Party" to the Agreement, or collectively as the "Parties" to the Agreement.

## RECITALS

WHEREAS, on or about March 3, 2015, Palumbo filed an action against Moffitt, in the United States District Court for the Central District of California, styled *Palumbo Design LLC v. 1169 Hillcrest, LLC et al.*, Case No. 2:15-cv-01899-DSF (VBKx) (the "Palumbo Action");

WHEREAS, Palumbo and Moffitt wish to settle the claims brought in the Palumbo Action, on the terms and conditions set forth in this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, including the mutual promises contained in this Agreement:

## AGREEMENT

1. **Key Terms.**

Palumbo agrees to the execution of an Agreed Order of dismissal with prejudice of the Palumbo Action in exchange for Moffitt's agreement to the following:

(a) For a period of 19 weeks following the operative date of this Agreement (the "Marketing Period"), Moffitt will not enter into any settlement agreement with Skyview Capital, LLC ("Skyview") or its member Alex Soltani in connection with an action filed by Skyview on or about March 27, 2015, in the United States District Court for the Central District of California, styled *Skyview Capital LLC v. 1169 Hillcrest, LLC et al.*, Case No. 2:15-cv-02321-DSF-VBK (the "Skyview Action"). This shall include, but is not limited to, forbearance by Moffitt from acting on any agreement wherein Moffitt agrees to sell to Skyview or Soltani real property located at 1169 N. Hillcrest Road, Beverly Hills, California 90210 (the "Property");

(b) During the Marketing Period, Moffitt agrees to list the Property on the open market, including, but not limited to, placing it on the Multiple Listing Service, with the goal of achieving a sale of the Property for optimal market value.

(c) During the Marketing Period, Palumbo will have full control of and decision-making authority over marketing activities, including, but not limited to, choosing realtors and executing listing agreements with agents at a 4 to 4.5% commission. However, if Moffitt or his counsel have a legitimate conflict with Palumbo's selection, they reserve the right to refuse a listing. However, Moffitt or his counsel

1

will not refuse any selection by Palumbo identified on an advance list provided in connection with this agreement. Palumbo will be present at all showings to describe and explain design concepts and the plans designed and drawn by the architect, in collaboration with Palumbo. Palumbo and Moffitt will discuss, through counsel, and agree upon any counteroffers before made to potential buyers. Moffitt agrees to act in good faith and in a timely fashion in considering and responding to offers.

(d) If Palumbo agrees to pay for an application for permits for the Property, that payment will be added to the costs-basis for the Property. That amount includes fees for consultants necessary to expedite the submittal process. Palumbo shall be reimbursed from any sales proceeds the application fees. Moffitt is not opposed to any reasonable proposal for contribution for fees.

(e) Within one month after the operative date of this Agreement, counsel for Moffitt, the assistance of Palumbo' counsel, will file a motion to expunge the lis pendens recorded by Skyview on the Property, to be heard within three months of the operative date of this Agreement or as soon as the arbitrator shall schedule. Moffitt shall contribute and pay for all necessary legal fees, expert witness fees, and other fact witnesses to win the motion.

(f) If, at the end of the Marketing Period, the Property is not in escrow for sale to a third party and/or the Skyview Action and lis pendens are still in effect, then Moffitt agrees that Palumbo (or a limited liability company to which he/it is a member) will have an option to purchase the Property for a sale price of $22,824,915.99. If Palumbo exercises the option, Palumbo will take the Property subject to any lis pendens or claims made on the Property at that time by Skyview and/or Soltani.

(g) Immediately upon execution of this agreement, counsel for Plaintiff in *Palumbo Design LLC v. 1169 Hillcrest, LLC et al.*, Case No. 2:15-cv-01899-DSF (VBKx) is to execute a stipulation and order to dismiss the case with prejudice, each party to bear its own costs and fees.

(h) Palumbo agrees to release Moffitt for any and all claims arising out of the allegations set forth in the acition entitled *Palumbo Design LLC v. 1169 Hillcrest, LLC et al.*, Case No. 2:15-cv-01899-DSF (VBKx). This release to does not effect any new conduct that would constitute a breach of the DSA after the execution of this Agreement.

## 2.   Development Services Agreement and Fee

(a) By and through this Agreement, the Parties acknowledge the validity and enforceability of the "Development Services Agreement" (the "DSA") executed by and between Palumbo Design LLC and 1169 Hillcrest LLC in or around March of 2014.

(b) The Parties further acknowledge that Palumbo is entitled to a "Development Services Fee", as defined in Schedule 5.1 of the DSA, upon sale of the Property by 1169 Hillcrest, LLC to any other party, including Palumbo.

(c) The Parties agree that an action to resolve any prospective dispute over the meaning and interpretation of the DSA is not barred by this Agreement. The Parties expressly incorporate by reference herein the venue and choice-of-law provisions of the DSA.

**3.    No Admission of Liability.**

This Agreement is entered into for purposes of settlement and compromise only, and each Party hereby expressly acknowledges and agrees that the other Parties hereto have not admitted, and by execution or performance of this Agreement do not admit, any liability or obligation to the other Parties, except for the obligations created by this Agreement. Nothing contained in this Agreement shall be construed as such an admission by any Party, and the Agreement and its terms are entitled to all applicable evidentiary privileges concerning settlement discussions and offers of compromise.

**4.    Entire Agreement.**

With the exception of the DSA, this Agreement comprises and contains the entire agreement between the Parties respecting the matters set forth in this Agreement, and supersedes and replaces all prior negotiations, understandings, proposed agreements and agreements between the Parties, written or oral.

**5.    Miscellaneous.**

(a)    The waiver of either Party of a breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any other subsequent breach.

(b)    The provisions of this Agreement shall not be construed against the Party responsible for drafting the Agreement.

(c)    All of the terms and provisions of this Agreement shall be binding upon, inure to the benefit of, and be enforceable by, each of the Parties hereto, their respective legal representatives, heirs and, as permitted hereunder, assigns. Nothing in this Agreement is intended to or shall be construed to grant or confer upon any person, other than the parties hereto and their respective successors and assigns, as permitted, any rights or remedies under or by reason of this Agreement.

(d)    If any provision of this Agreement is determined to be unenforceable, such determination shall not affect the remaining provisions of this Agreement, all of which shall remain in full force and effect, and shall be enforceable without regard thereto.

       (e)     This Agreement may be executed and delivered by facsimile and, upon such delivery, the facsimile will be deemed to have the same effect as if the original signature had been delivered by the other party.

      IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the date first written above:

1169 Hillcrest LLC, NAM2 LLC and Neil Moffitt

By: _____

              Neil Moffitt

Palumbo Design LLC

By: *Michael Palumbo* _____

      FBF6752433AA4AD...    Michael Palumbo

4

EXHIBIT 3



February 22, 2019

*Via Email and Federal Express*

1169 Hillcrest LLC
5555 Badura Avenue, Suite 120
Las Vegas, NV 89118
Attn: Neil Moffitt
*neil@hkkhospitality.com*

Greenberg Traurig LLP
3773 Howard Hughes Parkway, Suite 400N
Las Vegas, NV 89169
Attention: Michael J. Bonner
*bonnerm@gtlaw.com*

**Re:    Notice of Termination and Notice of Terminating Event(s) Pursuant to Development Services Agreement Between 1169 Hillcrest, LLC and Palumbo Design, LLC**

This notice by Palumbo Design, LLC ("Palumbo Design") shall constitute written notice as provided for by Sections 8 and 10.7 of the Design Services Agreement ("DSA") that Palumbo Design claims that 1169 Hillcrest, LLC's ("Owner") sale of the Property located at 1169 Hillcrest Road, and Owner's written termination of Palumbo Design are each a Termination Event under Section 8.1 of the DSA.

THIS NOTICE SHALL CONSTITUTE NOTICE OF OUR (PALUMBO DESIGN, LLC) DETERMINATION THAT A "TERMINATION EVENT" HAS OCCURRED UNDER THE DEVELOPMENT SERVICES AGREEMENT DATED AS OF MARCH ___, 2014 AMONG THE OWNER ("1169 HILLCREST, LLC) AND PALUMBO (PALUMBO DESIGN, LLC). IF YOU DISPUTE WHETHER A TERMINATION EVENT HAS OCCURRED, YOU MUST SUBMIT SUCH DISPUTE TO "ARBITRATION" IN ACCORDANCE WITH THE TERMS OF SAID DEVELOPMENT SERVICES AGREEMENT WITHIN SEVEN DAYS OF RECEIPT OF THIS WRITTEN NOTICE. YOUR FAILURE TO SUBMIT SUCH DISPUTE TO ARBITRATION WITHIN SUCH SEVEN-DAY PERIOD SHALL CONSTITUTE AN IRREVOCABLE, BINDING ADMISSION BY YOU THAT A TERMINATION EVENT HAS OCCURRED.


Palumbo Design, LLC


By _____
Its Manager